237038. Counsel, you may proceed. Thank you, Your Honor. May it please the court, my name is Daniel Kaplan. I represent the appellant, Anthony Walker. A jury instruction on a crime with lessors is a decision tree. The jury instruction in this case on the crime of first degree murder was a tree that was missing a crucial limb. You didn't request the crucial limb? We did, Your Honor. So you never requested it? We did request it, Your Honor. So what happened was the court, and you may be referring to the government, makes note of our pretrial written proposed jury instructions. In the pretrial proposed written instructions, we did not include involuntary manslaughter slash imperfect self-defense. In other words, imperfect self-defense as the basis for involuntary manslaughter. However, in the course of trial, after the close of evidence, the judge sent the parties to an off-the-record one-hour conference with his clerk to work out instruction issues. When they came back on the record, the involuntary manslaughter instruction, which was an imperfect self-defense instruction, was in the instructions. We know this because it was referred to seven times by both parties and by the court. And that was the point at which my colleague, the trial lawyer, said we need an additional instruction included within the first degree instruction that tells the jury not to convict if it was imperfect self-defense. And that's what was denied on the record. Is that in the record? Yes. And what page is it on if it is? Yes, Your Honor. So, excuse me, on page 492 of the record, the lead trial lawyer, John Sands, said, and again, this is what he said at the point at which the involuntary manslaughter imperfect self-defense instruction was in the instructions. He said in the Ninth Circuit, the government has to prove all the lessors beyond a reasonable doubt. So we would ask that involuntary be included as an element that the government has to prove beyond a reasonable doubt for first, second, and voluntary. Now, if you look at how the instructions came, how the first degree murder… No word about imperfect self-defense, though. No, I disagree, Your Honor. Not a single word. I disagree respectfully because the involuntary manslaughter instruction, which was in the instructions by that point and in the final instructions, is an imperfect self-defense instruction. I think what Judge Kelly was saying, not in so many… The words weren't used, correct? The words imperfect self-defense were not used. But there is no reason to tell the jury this, by the way, is what we lawyers call imperfect self-defense. They were told in the involuntary manslaughter instruction what the substance of that finding is. So in the involuntary… Did you argue that the instruction he was given was wrong? It wasn't wrong. Before the final instructions were given, did you object to that instruction and state the reasons that you objected? The instruction was correct, so there was no reason to object. The problem was it was not… In the involuntary manslaughter, it was… The involuntary manslaughter was correct, and it was an imperfect self-defense theory. So if you look at page 51 of the record, which is the jury, the final jury instructions, involuntary manslaughter is the title of this instruction. And then the first element is, on or about the date, the defendant caused the death of the victim while protecting himself lawfully but using excessive force without due caution and circumspection, which act might produce death. So this was submitted as the theory of involuntary manslaughter, an imperfect self-defense theory of involuntary manslaughter. Well, that is not contained in the involuntary manslaughter by itself. Somebody's got to say something about it. Imperfect self-defense, it does not automatically enter voluntary manslaughter instruction. Well, I'm not sure I follow the point you're making, Your Honor. This is a full involuntary manslaughter instruction, which is based upon the court's model involuntary manslaughter instruction. I'm very familiar with the model instructions. So I'm not understanding the point you're making because this is phrased, and the part I just read shows that it was phrased as an involuntary manslaughter instruction based on imperfect self-defense. No, I don't believe it says that. Go ahead, Your Honor. Well, that's what the language, causing the death while protecting himself. Well, counsel, let me try it this way, see if this helps. So I take it Mr. Walker asked the court to include involuntary manslaughter as an element of first-degree murder for the government to, I guess, what, disprove?  All right, so is that correct? Yes. All right. And I think that's what, there was an involuntary manslaughter, a freestanding involuntary manslaughter.  And I think we're kind of, so let's focus on that one. The one that was requested and not given. That's what we're talking about, right? That was the flaw. That was what we were teaching. Right, okay. There was not a problem with the involuntary that was given. It was correct. Okay, so let's focus on what you say should have been given but wasn't given. And what I'm interested in is if you embed the involuntary in the first-degree murder instruction and second and so forth, but let's just say the first-degree murder, how would that be an imperfect self-defense instruction? What makes, how does including that make it an imperfect self-defense instruction? I think we need some help understanding that.  Well, it should have been treated in the same way that heat of passion was treated. So heat of passion, voluntary manslaughter, and imperfect self-defense, involuntary manslaughter were the two mitigators that were in the evidence that were requested and given as mitigation that nullified malice, if believed, nullified malice. And this court said in brick, citing Sarawop, that to prove malice, the government has to disprove any mitigators that are part of the case. And those were the two mitigators that nullified malice in the case. So what should have been done, because what was done for heat of passion was, it was an element of the first-degree instruction. It said element sixth. The killing was not done in the heat of passion on sudden provocation. And then it said the killing was not done in self-defense. And what should have been added, if our request had been accepted, was eighth. The killing was not done while the defendant was protecting himself lawfully, but using excessive force without due caution and circumspection. So that the jury would be informed not to convict on first degree if they found what is, in essence, the substance of imperfect self-defense. An imperfect self-defense does not excuse the person from any crime. True. True. And what you're suggesting is that if they had done that and put in something more than just a voluntary manslaughter charge, it would have been an excuse for the crime. No. No. I'm not suggesting that. And that's the Sago case, as you're well aware. But that was fundamentally different, because in Sago, there was not an involuntary manslaughter instruction. The jury was not given the lesser crime to convict on. Here, there was. They got the instruction. They got the involuntary manslaughter instruction. Exactly. So if we got what we want, the jury would have been told, if you think this was, in essence, imperfect self-defense, don't convict on first degree. But they would also have been told, you can convict on involuntary manslaughter. That's what should have happened. And you're saying the jury never reached the involuntary manslaughter. They were specifically told not to. Not to. Right. Because they found malice on the first degree. They found malice. And you're saying they found malice without the instruction being included in the. . .  They found malice without ever having to think about committing it. Is that how it. . . Is there a pattern instruction that would include language about imperfect self-defense that could have been used? Judge Kelly, in his separate opinion, and I believe it was in Sago, I think he observes that he couldn't find any patterns that deal with this.  However. . . There's no more in there yet. Yeah. What I just read to you is based upon following the structure of what was in here. So in other words, what I said, imperfect self-defense slash involuntary manslaughter should have been treated exactly the same way that heat of passion slash voluntary manslaughter was treated to make sure the jury would not. . . Are you combining imperfect self-defense with involuntary manslaughter? No. Are you saying that if it's involuntary manslaughter, that automatically is imperfect self-defense? No, because there's other types. That's just incorrect. Well, this court said in Britt and many other cases that if imperfect self-defense is accepted, the result is involuntary manslaughter. That's what they said in Britt most recently. Well, it was also raised that imperfect self-defense was specifically raised in addition, and the judge was required under Britt to prepare an appropriate instruction, even though one was not tendered, which our rules sort of require. Well, I understand. I think we're mixing apples and oranges there with trying to force imperfect self-defense into an involuntary manslaughter instruction in all cases. No, I'm not suggesting it should be in all cases. There's other. . . involuntary manslaughter can be based on pure recklessness or extreme negligence. That's not this case. That's not any possible theory in this case, and nobody asked for it. But this is a case where we have a defendant who was scared. He was knocked on the ground. He thought they were following him. So many factors, people talked to him. They were scared for him, who saw what was happening. So in other words, this is a – and he made comments to the FBI that he was scared. He thought he had to act before they came after him. So this is a case where the theory of imperfect self-defense is very much in the evidence, and it supports an involuntary manslaughter instruction, which was given. But the question is beyond whether it's in the evidence. The question is, was the request clearly made, specifically and clearly made to the court? And it seems as though the request in Brip was a lot more clearly made than it was here. I mean, you have to defend what happened in court. I understand that. But just by virtue of the questions you're getting this morning, it doesn't seem like it was all that straightforward. At first glance, it doesn't seem straightforward. But when you put it in context of the instruction that was given, what Mr. Sands is saying is, for the other lessors, every lesser is built into all the greaters. Every lesser, every greater – Well, that's the definition of a lesser, isn't it? You must find not every remaining lesser. And then to go down a level, you must find not – and he said we should be treating involuntarily the same. I'd like to, if I could, just reserve the balance of my time. Well, I've got another question for you, if that's okay. Okay. I mean, we're looking to you to help us. Sure. So I'm going to ask you.  Let's say that the instruction had been given. How does the government go about disproving imperfect self-defense if it's proven malice? Well, they can't prove malice if there's imperfect self-defense. But malice is already in the first-degree instruction. Sure. Well, they haven't proved it until they've negatived all of the mitigators. That's what this court said in Zerilop and Britt. Part of proving malice is disproving all the mitigators. Have you got a case example from our circuit where something like this imperfect self-defense is embedded in the first-degree murder instruction? Have you got a case where that's happened? I don't have one offhand. I might be able to find one and file a real 20-J letter. That would be helpful. Okay. All right. Okay. You've got some time left unless you want to say something else. I'd like to reserve for rebuttal if I could. Thank you. Good morning, Your Honors. Lisa Williams here on behalf of the United States of America. Listening to the court's questions, I believe the court got right to the main issue here, which is that there is a radical difference between imperfect self-defense and involuntary manslaughter. One, of course, is an affirmative defense, while the other is a lesser-included offense. And while all imperfect self-defenses reduce culpability to involuntary manslaughter, not all involuntary manslaughters equal imperfect self-defense. And because of that, the defendant was required to specifically request an imperfect self-defense instruction if that's what he wanted. He failed to do that, and then he failed to object to the exclusion of imperfect self-defense in the court's jury instructions. And again, Rule 30 requires all objections to the instructions to be clear and to be made on the record. So how would you compare what happened here with Britt? So in Britt, they actually asked for the imperfect self-defense instruction. And the issue in Britt was the defense instruction that was proposed was wrong. It was legally incorrect. And the court threw up its hands and said, well, you gave me a wrong instruction, so we're not going to do it. And what this court found was error is the court's refusal to craft the correct instruction. Because it found that the defense properly asked for it. There was evidence to support the instruction. They teed up the issue. And at that point, the court has the burden, I wouldn't say burden, but responsibility of putting together a correct set of instructions. Do you agree with counsel that the evidence here would have supported an imperfect self-defense instruction? I know you're arguing that it wasn't requested properly, but was the evidentiary basis for it there? I think I have to agree to that, Your Honor, because I've thought a lot about it. And I don't know how you could say that evidence supports self-defense but not imperfect self-defense. Because imperfect self-defense simply is a self-defense instruction that says, but your use of force wasn't reasonable. You weren't reasonably justified. And so if the other elements of self-defense have been proven, which the district court found, I think that the only difference, right, is the reasonableness of the defendant's subjective belief. And that's an issue that the jury should decide, not one that should prevent the instruction from being given. It's almost like imperfect self-defense is a lesser included of self-defense in a way. So I don't think that you could argue that the evidence is insufficient. But here, I mean, if you agree that an imperfect self-defense instruction would have been appropriate here, and here they essentially do, they are equal, and they did request an involuntary manslaughter instruction be included within the first degree murder instruction, why wouldn't that have solved the problem? Because they didn't ask for it, Your Honor, and here's the thing. Well, I'm asking if it had been given, wouldn't it have had the effect that counsel says it would? To have essentially put imperfect self-defense in front of the jury. You mean if the imperfect self-defense instruction was given by the jury? No, if the involuntary manslaughter had been included where they wanted it to be. So the jury would have had to deal with it. The jury, first of all, did deal with the issue because of the finding of malice. He says Sarawop and a couple other cases basically say you have to disprove all the different lesser included. And that's the distinction. What about that? That's the really interesting part, especially how Loftin plays into this. So the case law is that the government does have to prove affirmative. Well, what Loftin says is that the government does have to prove that the defenses, the affirmative defenses, have not been proven. What Loftin does not say is that the lesser included have to be. And if you look at the objection language that Mr. Sands used at the trial court, he said in the Ninth Circuit, the lessors all have to be included. And that may very well be true. But in the Tenth Circuit, it's not that the lessors have to be included. It's that the defenses have to be included. And so when you properly put Loftin in that context and read what it requires, then the failure to include the involuntary as an element of the murder instruction is not at all error because we don't require the lessors to be included here. Moreover, the concern with not including heed of passion and the affirmative defenses is a lot of what was argued and what Loftin lays out, that the jury won't properly get to consider the defense. But here, because involuntary requires the absence of malice, the jury necessarily rejected involuntary when it found defendant acted with malice. That is not the same as heed of passion and as voluntary. The involuntary is kind of a separate issue that is dealt with through the first degree murder instruction because of that. But what this court has to do, first of all, is separate out this imperfect self-defense from the involuntary issue. And if you go through the defense reply brief, the defense argues that they asked for imperfect self-defense because they argued imperfect self-defense in opening and closing. And that is not sufficient under this court's precedent to constitute the required request of the court. Simply because they argued it doesn't mean they asked for the instruction properly or filed a proper objection to the lack of inclusion. At least if we said that in a case. I would say the Davis case, yes, your honor. And because Davis says when the defense is not squarely raised, the jury need and malice is not presumed, which is this case, right? The government had to prove malice. So when the defense isn't squarely raised, the malice is not presumed. There's not an error with the instructions. The jury need not be told. The government must disprove heed of passion. Davis was a case that kind of limited Lofton, but it says if you don't squarely ask for it, then the government and the court don't have to include it in the instructions. And I really want to get to the heart of why that is. It's because this is a strategic tactical issue that the defense makes. Requesting instructions, lesser included, and defenses is a strategic defense decision. This case screams first degree murder. This man, the confrontation happened over the middle school. He got bested by a group of teenagers in front of other people. They threw his bike, which I think is pretty disrespectful. So he's in a mood. They drive away. These teenagers go to get sodas, and he sees them. And he stops his bike out of the drive-thru line where they're waiting, puts his bike down. He gets into his backpack. He pulls out a knife. He looks at the car, and we know because it's all on video. He looks at the car, and then he approaches the driver's side window, and he stabs the victim in the heart. It screams first degree murder. And as a strategical decision, defense counsel may have decided to only go with self-defense, which is a complete acquittal, and muddle the issue of the defendant's state of mind and whether it was reasonable, subjectively reasonable, or objectively reasonable. Muddle that issue. Maybe they didn't want imperfect self-defense spelled out in front of the jury. Maybe they wanted to go swing for the fences and try to get a self-defense. And that's why they didn't ask for it. They asked for an involuntary manslaughter instruction to be included with the mouse instruction. Isn't that evidence of what they intended? Well, not the way this involuntary manslaughter instruction reads because it is nowhere close to any type of imperfect self-defense. The language and the issues that are present in that are completely different than self-defense. And they did hammer self-defense in opening and closing. And so, again, it very well could have been a decision that they made in consultation with their client to say, listen, would you rather try to just get a total acquittal or would you go for something lesser? And maybe they decided, let's just go for the acquittal because this is not a good case for us. And it's not. I mean, this is very strong evidence of first degree murder. But all we know is that they never asked for imperfect self-defense. So to put an obligation on the district court to sui sponte, get involved in trial strategy, and bring up affirmative defenses on its own is something that this court has never required from the district court. And it shouldn't require it in this case either. Because of that, the government's position is that the issue regarding imperfect self-defense is either waived because they affirmatively requested instructions that didn't include it, or at the very least, this court reviews on plain error review. The only preserved issue is whether the involuntary lesser included offense should have been included in the marshaling instruction for first degree murder, which we've already discussed. And because it's a lesser included, not an affirmative defense, Lofton and this court's case law doesn't require it to be included. And because the government had to prove malice, there was no need to include it. When you look at me that way, Judge Moritz, it makes me think that I'm not making sense. No, I'm actually just thinking about, I was thinking that there was actually some request or maybe a reference to imperfect self-defense in closing argument by defense counsel at some point. Pretty clearly. There was some language, you know, it may not be reasonable to you. Right. It would follow right along the line with imperfect self-defense. And that's my point, Your Honors. Maybe that was a strategic move to try to confuse the jury about what self-defense required. I mean, we just don't know. Maybe they forgot to ask for imperfect. We don't know. Well, but as I understood what you said earlier, I think what you were arguing is it doesn't matter what was said in opening or closing. That's correct. That's correct, Your Honor. So even if in closing the argument was, well, we've argued self-defense, but maybe we haven't quite made it there, it's not perfect. But that isn't, from your standpoint, that's not going to be enough. That's correct. You can't request a jury instruction in your closing arguments.  So we are actually back to what they did request. And let me make sure I understand this, because if I understand the appellant, it's they, in effect, asked for imperfect self-defense when they asked for the involuntary manslaughter in the first-degree murder instruction. And what you're saying is, no, those two things can't be equated because involuntary manslaughter is a lesser included and imperfect self-defense is an affirmative defense. So that's your answer to that argument. Have I got that right? Yes, Your Honor. And you can tell that because you can read the self-defense instruction at the court case. And an imperfect self-defense instruction would track this language exactly, except then it would say, for imperfect self-defense, a defendant's belief that such use of force was needed does not have to be reasonable. The defendant needed to subjectively believe that the use of force was necessary. And then you flip to the involuntary manslaughter instruction, and these two are night and day. There's just simply nothing comparable about the involuntary manslaughter instruction given in this case. And so you cannot equate the two of them. They're just radically different. So asking for one cannot mean you ask for other. But does proof of imperfect self-defense or government's failure to disprove it knock the crime down to involuntary manslaughter? If a jury were to find that the defendant acted in imperfect self-defense, yes. It's not a full acquittal like self-defense. It is a conviction for the involuntary manslaughter. But because of that, because they're paired in that way, why doesn't that support the appellant's argument? Well, they're paired in that way because of the malice requirement. And counsel conceded that during his argument time. You cannot prove malice if there's imperfect self-defense. And involuntary manslaughter is a type of killing without malice. And it's the only type of killing without malice. So if somebody kills someone in imperfect self-defense and acts without malice, the only type of killing they have committed is an involuntary manslaughter. Well, I get that. But I think if I understand the other argument correctly, jury gets instructed on malice. And I think what the argument is. But they should have been told that when you're thinking about malice, you ought to think about whether there's something short of full self-defense, but some defense when you're thinking about malice. And the jury never got told that. And that's what defense counsel at trial was trying to do. And I see my time is up. May I answer your question? Please do. So the jury was given a full definition of malice within the first-degree murder marshalling instruction. So the jury full well knew what malice meant. And if defendant had requested and received an imperfect self-defense instruction, under Lofton, it probably should have been included. But that's not what they requested. And that's not what they received. What the issue is is that the involuntary language should have been in there. And because of the way this involuntary works, they would never – if they find there's malice, you know, they're going through the first-degree murder, they find there's malice, then that automatically means that they cannot find him guilty of involuntary manslaughter. It's almost like an either or. You know, you can't have both. And so once they make a decision, there's no need for them to also consider whether or not imperfect self-defense or involuntary manslaughter existed because they've already decided in a way that it hasn't. So they shouldn't have to separately, again, debate the same topic, I guess, is what the government's position is. I understand your argument. Judge Kelly, anything further? No, thank you. Thank you. Thank you, Your Honor. Thank you. We have some rebuttal time. Thank you, Your Honor. Well, just now the government conceded that I should win. As you heard what she said toward the end there, she said, if the circumstances were that they had an instruction on involuntary, that was an imperfect self-defense instruction, and they asked that it be incorporated into the malice part of the first-degree murder instruction, they probably should have gotten it. That's the case. That's exactly what happened. I'm not sure she would agree with you, but that's okay. Well, she wasn't thinking about it that way, but that's what she said. Now, what she said also at the end there was that the jury found malice, therefore they rejected imperfect self-defense. Well, I think as Judge Matheson was observing, it doesn't mean anything, and Judge Martz too, it doesn't mean anything that the jury found malice when they weren't told don't do that if you think it was imperfect self-defense. And they were not told that because our request was denied. If they had been given the instruction as part of the first-degree, they would have been told not to find malice if it was that he was defending himself, protecting himself in an unlawful manner, in an excessive manner, et cetera. And that's the flaw. And Britt and Sarah Lopp say rejecting the mitigation is part of proving malice and the government was not required to. And the instructions, as in Lofton, the instructions specifically told the jury, stop what you're doing and go home. If you find these things under first degree, none of which told them to even think about what constitutes imperfect self-defense. That's why Lofton is on point, and that's why, as in Lofton and Britt, we need a new trial in this case. If there are no further questions. Thank you, counsel. Thank you. You've both given us a lot to think about, so thank you for the arguments this morning. The case will be submitted and counsel are excused.